UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BYRON DEXTER,

Petitioner,

-vs-                                                    Case No.  8:07-cv-1452-T-24TBM

SECRETARY, DEPT. OF CORRECTIONS,

Respondent.
_____/

## ORDER

This cause is before the Court on Petitioner Byron Dexter's 28 U.S.C. § 2254 petition for writ of habeas corpus. Dexter challenges his conviction and sentence entered by the Circuit Court for the Thirteen Judicial Circuit, Hillsborough County, Florida.  A review of the record demonstrates that, for the following reasons, the petition must be denied.

PROCEDURAL HISTORY

On July 28, 1999, Dexter was charged by Information with one count each of Armed Burglary of a Dwelling, Felony Causing Bodily Injury, and Attempted Robbery with a Firearm. (Exh. 19: Vol. 1: R 13-17).[1] On December 3, 1999, the State filed a supersedes Information adding one count of Felon in Possession of a Firearm. (Exh. 19: Vol. 1: R 30-34).

_____

[1] The three-volume record on direct appeal is attached as Respondent's Exhibit19.

The case proceeded to jury trial on January 16-18, 2001.[2] The jury returned a verdict of guilty as to the armed burglary and felony causing bodily injury counts, but found Dexter not guilty of the attempted robbery charge. (Exh. 19: Vol. 1: R 106-108). On January 22, 2001, the state trial court, at Dexter's sentencing hearing, found that Dexter qualified for sentencing as a prison releasee reoffender and sentenced him to life in prison on the armed burglary count and a concurrent life sentence on the felony causing bodily injury count, with a ten year minimum mandatory term on each count. (Exh. 19: Vol. 2: T 249-263, 255-257). Dexter entered a plea of no contest to the fourth count, felon in possession of a firearm, in exchange for a time-served sentence. (Exh. 19: Vol. 2: T 259-262).

Dexter appealed. Appellate counsel filed an *Anders*[3] brief, but directed the state district court of appeals' attention to two potential issues for review:

Issue I

WHETHER THE EVIDENCE WAS SUFFICIENT FOR A CONVICTION?

Issue II

WHETHER THE TRIAL COURT ERRED IN IMPOSING SENTENCE?

Dexter filed a pro se initial appellate brief raising four issues:

Issue One

The trial court's failure to properly instruct the jury on an essential element in count two created fundamental error.

---

[2] Dexter was first tried in August, 2000. (Exh. 19: Vol. 1: R 35- 65). That trial, held before a different judge, ended in a hung jury.

[3] *Anders v. California*, 386 U.S. 738 (1967).

### Issue Two

Fundamental error occurred when the Appellant was convicted under count two as the evidence was insufficient to support the conviction as a matter of law.

### Issue Three

The Appellant's armed burglary conviction violates due process as the jury failed to find the interlocking charge of attempted armed robbery.

### Issue Four

As applied to this case, § 810.07 is unconstitutional as the facts in the record and the presumptive intent created in § 810.07 did not show a rational connection.

(Exh. 2)

On July 24, 2002, in Case No. 2D01-687, the state district court of appeal per curiam affirmed Dexter's conviction and sentence. (Exh. 5). *Dexter v. State*, 826 So. 2d 295 (Fla. 2d DCA 2002)[Table].

On August 28, 2002, Dexter, pro se, filed a Rule 3.850 motion for postconviction relief and supporting memorandum of law. (Exh. 7). Dexter raised four grounds in the motion. In the first three grounds, Dexter alleged trial counsel was ineffective for: (A) acknowledging Dexter's guilt with remarks in opening statement that conceded the victim had not invited Dexter into the residence, despite the fact Dexter informed counsel that the victim had done so; (B) failing to file a motion in limine or a motion to suppress statements of Detective Dorothy Flair, who testified at trial regarding earlier conversations between Dexter and her that allegedly violated Dexter's *Miranda*[4] rights; and (C) failing to advance an adequate motion for judgment of acquittal, and failing to ensure, via a timely objection, that the court issue a ruling on the motion so that the substance of the motion would be preserved for appeal. In ground four, Dexter

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

claimed the state trial court failed to permit him an opportunity to present evidence and witnesses during his sentencing hearing, and that counsel was ineffective for failing to require "the Court to first adjudicate movant guilty of the offenses and then impose sentencing consistent with Rule 3.720."

On November 4, 2002, the state trial court summarily denied ground four and directed the State to respond to grounds A, B, and C. (Exh. 8). The State filed its response conceding Dexter was entitled to an evidentiary hearing on those three grounds. (Exh. 9). The state trial court held an evidentiary hearing on August 18 and 29, 2005. (Exhs. 10 & 11).

On January 26, 2006, the state trial court denied Dexter's motion for postconviction relief. (Exh. 12). The court denied grounds A and B for lack of merit.  Dexter appealed the final order, raising three issues in his pro se initial pro se brief. (Exh. 13).

Issue One

THE LOWER COURT ERRED IN DENYING GROUND "A" OF DEFENDANT-APPELLANT'S MOTION FOR POSTCONVICTION RELIEF BECAUSE APPELLANT DID NOT RECEIVE A FAIR AND ADEQUATE EVIDENTIARY HEARING BECAUSE OF A CHANGE IN CASE LAW.

Issue Two

THE LOWER COURT ERRED IN DENYING GROUND "B" OF DEFENDANT-APPELLANT'S MOTION FOR POSTCONVICTION RELIEF BECAUSE APPELLANT DID NOT RECEIVE A FAIR EVIDENTIARY HEARING DUE TO THE LOWER COURT'S CONSIDERATION OF ADDITIONAL EVIDENTIARY HEARING TESTIMONY.

Issue Three

THE EVIDENTIARY HEARING COURT ERRED IN ALLOWING HIS EVIDENTIARY COUNSEL TO WAIVE GROUND C OF HIS MOTION FOR POSTCONVICTION RELIEF. [5]

On April 18, 2007, in Case No. 2D06- 1012, the state district court of appeal per curiam affirmed the state trial court's denial of the motion for postconviction relief. (Exh. 15). *Dexter v. State*, 976 So. 2d 1003 (Fla. 2d DCA Apr. 18, 2007)[Table]. Dexter filed a motion for rehearing (Exh. 16), which the state district court of appeal denied on May 25, 2007. (Exh. 17). The mandate issued June 14, 2007. (Exh. 18).

Dexter timely signed the present federal petition on August 13, 2007. The petition raises four grounds for relief.  However, Dexter abandoned ground four in his reply to Respondent's response to the petition and asked the Court to "reject Respondent's conclusion that his habeas petition should be denied, since it [the petition] actually demonstrates that he is entitled to habeas corpus relief on grounds one, two, and three. (Doc. No. 13, pp. 8-9).

Standards of Review

STANDARDS OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough

---

[5] Ground C was withdrawn by Dexter's postconviction counsel, with Dexter's approval, during the initial evidentiary hearing on August 18, 2005. (Exh.. 9 at pp. 112-12).

that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

Ineffective Assistance of Counsel Standard

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

Discussion

Ground One

Dexter asserts trial counsel was ineffective for conceding Dexter's guilt during opening statement. The state trial court properly denied this claim after an evidentiary hearing, finding counsel's remarks were based on reasonable trial strategy. The state trial court's order states:

> In Ground A of his Motion, Defendant claims counsel was ineffective for acknowledging Defendant's guilt in opening argument and conceding that the victim had not invited Defendant into the residence, even after Defendant informed counsel that the victim had done so. Specifically, Defendant claims counsel's statement prejudiced his intended defense - to assert that he was an invitee on the victim's premises - against the burglary charge. Defendant also claims counsel's actions relieved the prosecutor of the burden of proving each element of the burglary charge.

> At the evidentiary hearing on August 18, 2005, trial counsel, Victor Martinez, Esquire, and Defendant each testified. Defendant testified in conformance with his Motion. While he did not have specific independent recollection regarding this case, after reviewing the trial transcript, Mr. Martinez testified it was part of his trial strategy to argue that Defendant was "uninvited,

-6-

unwelcome, and unexpected at John Kirkland's [the victim's] house." As to his theory of defense, Mr. Martinez testified as follows:

> No, it was our position in the trial that since Mr. Dexter and the victim of the case were friends, okay, and they were close friends and that they knew each other that it would not be smart to plan a home invasion and go to a spot where you didn't know what you were getting into. Okay, and it would have been very easy for Mr. Dexter, because they were friends, to schedule some kind of meeting, -- he would have to wear a disguise anyway -- go in, commit the offense, and not be unaware of what he would encounter when he arrived. That was the reason for saying he was [un]invited, he was unexpected, he could have -- he could have, because of his relationship with the victim, set it up so that there would be visit [sic] and he would know what he was walking into.

(August 18, 2005 transcript, pp. 29-30, attached).

. . . .

> That he would -- that he was -- that if he was going to be the person that committed the offense, given his relationship with the victim, that there were ways that he could have ascertained what he was walking into. And since he wasn't invited and didn't make any plans to go over there and wasn't expected, they probably have the wrong man. That's the position that I was trying to get across.

(August 18, 2005 transcript, 30-31, attached).

. . . .

> The point that I was trying to make was that since they were going to hear that they knew each other and were good friends, the accused and the victim, and since the accused was allegedly over there, you know, and not expected and not invited on that particular day, he wouldn't have known what he was walking into. And it would have been a much smarter approach if you were going to be wearing a disguise anyway, because you were known to the victim, to set up some kind of planned rendevous [sic] so that you would know exactly what you were walking into. That's what would have been smart, like it would have been smart to remain silent, you know, if you had something to hide. And when he spoke to law enforcement, it's because he had nothing to hide.

(August 18, 2005 transcript, p. 40, attached).

Based upon the testimony presented at the August 18, 2005 evidentiary hearing, the Court finds the testimony presented by Mr. Martinez to be highly credible. *See Smith v. State*, 697 So. 2d 991, 992 (Fla. 4th DCA 1997) (stating that following an evidentiary hearing the finder of fact can rely upon testimony it finds to be credible). Accordingly, the Court finds it was defense counsel's trial strategy to argue that Defendant was "unexpected, uninvited, unwelcome." The Court further finds that said strategy was reasonable given the circumstances of this case. Moreover, the Court finds that, after discussing said strategy with counsel, Defendant was well aware of and in agreement with trial counsel's strategy. Finally, the Court further notes that "[c]ounsel's strategic decisions will not be second-guessed on collateral attack." *Johnson v. State*, 769 So. 2d 990, 1001 (Fla. 2000). Consequently, the Court finds Defendant fails to demonstrate how counsel performed deficiently pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984). As such, no relief is warranted on ground A of Defendant's Motion.

(Exh. 12 at pp. 2-3).

The state trial court's conclusion that trial counsel's actions were appropriately based on trial strategy is supported by the record and is objectively reasonable under the *Strickland* standard. A trial counsel's strategic or tactical choices in a criminal case, after a thorough investigation of the law and facts, "are virtually unchallengeable." *Strickland*, 466 U.S. at 689-690. Moreover, the fact that a chosen strategy or defense was ultimately unsuccessful does not mean that counsel's performance was ineffective. *See Zamora v. Dugger*, 834 F.2d 956, 959 (11th Cir. 1987) (attorney's tactical decision to employ an insanity defense may not have been successful in retrospect, but *Strickland* allows trial counsel great latitude to conduct a defense).

The state court's ruling was not contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; and did not

result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[6]  28 U.S.C. § 2254(d).

Dexter is not entitled to habeas corpus relief on ground one because he has not shown that trial counsel was performed ineffectively in applying the strategy trial counsel did in his opening statement.

## Ground Two

Dexter contends trial counsel was ineffective for failing to file a motion to suppress statements that were elicited in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). The state trial court found:

> In Ground B, Defendant claims counsel was ineffective for failing to file a motion in limine or to suppress statements made by Defendant to Detective Dorothy Flair prior to Detective Flair advising Defendant of his *Miranda* rights. Defendant claims counsel's failure to move for suppression of this testimony, and subsequent failure to file a motion in limine, prejudiced his defense by allowing the jury to hear excludable and very damaging testimony.
>
> At the evidentiary hearing on August 18, 2005, Sergeant Dorothy Flair (formerly Detective Flair) and Defendant each testified. Defendant testified in conformance with his Motion. Sergeant Flair testified that when she initially approached Defendant while he was hospitalized at Tampa General Hospital, he was only a "possible" suspect, he was not under arrest, and she did not advise him of his *Miranda* rights; however, once she realized Defendant was making conflicting and evasive statements, she then advised him of *Miranda.* Sergeant Flair testified as follows:
>
> > [MS. FRIEDLANDER] (Postconviction counsel): Okay, at what point do you decide to read him *Miranda*?
> >
> > [SERGEANT FLAIR]: After he gave those statements that he didn't know what had happened, then, you know, that maybe it was cousin [sic] but then he didn't think it was his cousin. And so at that

---

[6]  The state trial court conducted an evidentiary hearing.  Its findings are "presumed to be correct" (28 U.S.C. § 2254(e)(1)) and there is no showing that its decision "was based on an unreasonable determination of the facts. . ." (28 U.S.C. § 2254(d)(2)).

point I said, "Let's just stop." And "You're not going to tell me what happened there?" "You have no -- you know, you're not giving me a statement about what happened here this morning." So now in my mind he's clearly a suspect and I advised him of *Miranda*.

[MS. FRIEDLANDER]: What had changed in your mind to make him clearly a suspect? Was he not clearly a suspect in your mind when you went into the room?

[SERGEANT FLAIR]: There is always the potential that he had a story that would have changed something about what had occurred so far in the investigation. And so that's why I -- I had made the attempt to get a statement from him. When he was not telling me about what had happened, then it was obvious to me that he was clearly a suspect.

(August 18, 2005 transcript, pp. 77-78, attached).

. . . .

[MS. FRIEDLANDER]: What had changed -- I don't know if you answered this question, too. What had changed? Just the fact that he gave an inconsistent statement? That is what had changed in your mind at the time that --

[SERGEANT FLAIR]: I -- I had gotten -- I had conducted interviews and I had gotten a statement from Mr. Kirkland [the victim]. I went there with the anticipation that I would hear what he had to say. If there something [sic] about what he was saying that was different from what I had heard before or that shed a different light on the work investigation, then I would have something different to work with. In -- but when he started telling me that he wasn't even there and that this had potentially occurred on Horton Street and then he changed it and said, no, that, you know, he had a cousin that he had a conflict with, then at that point, after 11 minutes, I said, "Okay, we need to stop and advise you of *Miranda* and interview you as a suspect."

[MS. FRIEDLANDER]: But up until he made that statement to you, he was still free to leave that whole 10 or 11 minutes?

[SERGEANT FLAIR]: He was not under arrest at that time. He couldn't leave, he was in the hospital. But I wasn't holding him there. He was not under arrest.

-10-

(August 18, 2005 transcript, pp. 78-79, attached).

. . . .

[SERGEANT FLAIR]: I was not holding him and neither was the Deputy that was posted there. That's all I know how to tell you. He couldn't leave because of his physical condition and he was in the hospital, but I was not holding him there.

[MS. FRIEDLANDER]: Do you know whether the other two law enforcement officers there were holding him?

[SERGEANT FLAIR]: No, they weren't.

(August 18, 2005 transcript, p. 79, attached).

. . . .

[THE STATE]: Detective, is it fair to say that in the investigation of Renfroe,[7] you knew that two people were shot in the early stages of your investigation; correct?

[SERGEANT FLAIR]: Yes.

[THE STATE]: Did you know who was necessarily the victim and who was necessarily the suspect with any degree of certainty?

[SERGEANT FLAIR]: No.

[THE STATE]: Did you know whether it was a self defense situation?

[SERGEANT FLAIR]: At the -- in the beginning?

[THE STATE]: Yes, sir? I mean, yes, ma'am. I'm sorry.

[SERGEANT FLAIR]: No.

[THE STATE]: Did you know whether it was a drug deal gone bad?

[SERGEANT FLAIR]: No.

[THE STATE]: Did you know whether any criminal offense had actually occurred with any certainty? Was your investigation

---

[7] The crime occurred at 14841 Renfroe Street, Tampa, Florida. (Exh. 1, p. 3).

complete? Let me put it that way. Were you sure what -- let me -- were you sure exactly what had happened on Renfroe?

[SERGEANT FLAIR]: In the beginning?

[THE STATE]: Yes?

[SERGEANT FLAIR]: No.

[THE STATE]: As you went to the hospital and found that Mr. Dexter was suffering from a gun shot wound,  did you testify, is it fair to say, at the first trial during the course of Mr. Heinman's [sic] examination that in fact Mr. Dexter was not really a suspect because you really didn't know what happened? You were asked, pointedly, was he suspect [sic] and you said, "Well, it's hard to answer that. I didn't know;" is that correct?

[SERGEANT FLAIR]: That's correct.

[THE STATE]: Essentially, he could have been a victim or he could have been — used justified [sic] -- using deadly force; is that correct?

[SERGEANT FLAIR]: Yes.

[THE STATE]: Now at that time -- I'm going to put us in the time of the statements. When you go in there, you and Detective Lowery both were in business suits; correct?

[SERGEANT FLAIR]: Yes.

[THE STATE]: And your guns that Counsel mentioned, although you were wearing them, were concealed; correct.

[SERGEANT FLAIR]: Yes. I had a jacket on over mine.

[THE STATE]: And was Mr. Dexter at any time handcuffed?

[SERGEANT FLAIR]: No.

[THE STATE]: Other than the medical treatment that Counsel's mentioned, was he in any way restrained; prevented from leaving?

[SERGEANT FLAIR]: No.

[THE STATE]: In fact, Deputy Couey, the deputy in the hallway, was he even visible from inside the room?

[SERGEANT FLAIR]: Probably not.

[THE STATE]: Was there any indication to you that this Mr. Dexter even knew that there was a deputy out there?

[SERGEANT FLAIR]: In the hallway?

[THE STATE]: Yes?

[SERGEANT FLAIR]: No.

[THE STATE]: Did Mr. Dexter ever make an attempt to get up and leave?

[SERGEANT FLAIR]: No, he didn't.

[THE STATE]: At any point in time, if Mr. Dexter would have said, "I don't want to talk to you. End of conversation," would he have been arrested at that point - - at that point?

[SERGEANT FLAIR]: No.

[THE STATE]: When you asked him questions, was he in custody?

[SERGEANT FLAIR]: No, he wasn't.

[THE STATE]: Initially? Did there come a point in time where you mentioned you were -- let me back up. Strike that. You said you were uncertain as to whether or not he was a suspect, victim, or other. As he talked to you in conversation, did there come a point in time where your opinion changed as to whether or not he was a suspect, victim, or other? Did it change to the point of, "Okay, this guy's definitely a suspect?"

[SERGEANT FLAIR]: Yes.

[THE STATE]: At that point, when you felt that way, did you immediately stop the interview and read him his *Miranda* warnings, according to the standard operating procedure?

[SERGEANT FLAIR]: Yes, I did.

-13-

(August 18, 2005 transcript, pp. 84-87, attached).

. . . .

[THE STATE]: Okay, now during the course of this particular investigation, was it possible as you went in there that Mr. Dexter was in fact a victim of a shooting and not the defendant?

[SERGEANT FLAIR]: It was possible, yes.

[THE STATE]: As you mentioned to Counsel, you wanted to go back and reflect on the information before you made a charging decision. Once it became apparent to you that it was pointed he was a suspect, is that the point in time where he was considered a suspect and thus *Miranda* was read? Just so the Court can understand the timings of this in the -- in the minutes.

[SERGEANT FLAIR]: Yes.

[THE STATE]: Up until that point, he wasn't a suspect completely, you were still trying to do an investigation to find out what his role was in this case?

[SERGEANT FLAIR]: Yes, I was.

[THE STATE]: Okay, and no time did you ever restrain his liberty or tell him he was not free to leave; correct?

[SERGEANT FLAIR]: That's correct.

[THE STATE]: Did you do [sic] show of force; show a gun, show cuffs, giving instructions as present, anything that might lead him to believe that he was not free to leave?

[SERGEANT FLAIR]: No. I mean, again, I introduced myself as a detective and he obviously knew that we were law enforcement.

[THE STATE]: And one thing I think I want to make sure the record reflects. Mr. Dexter was not transported involuntarily from the scene of this crime to the hospital; correct? He voluntarily, on his own -- on his own, went to the hospital of his choice; correct?

[SERGEANT FLAIR]: Correct.

[THE STATE]: So you just basically were looking for Byron Dexter and he turned up in a hospital? Law enforcement or EMT's had no

-14-

direct responsibility of having him physically transported to this location; correct?

[SERGEANT FLAIR]: That's correct.

[THE STATE]: Mr. Dexter went there on his own, to the place where he as [sic] claiming to be confined by [d]efense attorney; it was his choice to go there, not law enforcement's?

[SERGEANT FLAIR]: That's correct.

(August 18, 2005 transcript, pp. 87-89, attached).

The Court first notes that although the State argues Defendant is not prejudiced by the admission of those pre-*Miranda* statements because the State could have also introduced other statements wherein Defendant admitted that he lied to law enforcement, the Court is aware that it may only consider the totality of the evidence which was actually presented to the jury. *See Tyson v. State*, 905 So. 2d 1048 (Fla. 2d DCA 2005) (after trial court denied defendant's motion for post conviction relief based upon subsequent testimony which was not introduced during trial, appellate court reversed and remanded in order for trial court to consider defendant's motion in light of the evidence that was before the jury). Accordingly, the Court has considered only the statements which are the subject of the instant claim, and not any other statements Defendant may have made to law enforcement which were not introduced at trial.

In determining whether counsel should have filed a motion in limine or motion to suppress Defendant's pre-*Miranda* statements to Sergeant Flair, the Court has considered whether Defendant was in custody at the time Sergeant Flair began questioning him.

Under the dictates of *Miranda v. Arizona*, a suspect involved in a custodial interrogation by law enforcement officials is entitled to the procedural safeguard of the *Miranda* warning, the key being that the suspect must be in custody. The ultimate inquiry in determining whether a suspect is in custody is "whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest."

*Correll v. State*, 523 So. 2d 562, 564-65 (Fla. 1988) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)) (citation omitted); *see also Davis v. State*, 698 So. 2d 1182, 1188 (Fla. 1997) ("*Miranda* warnings are required whenever the State seeks to introduce against a defendant statements made by the defendant while in custody and under interrogation. Absent one or the other, *Miranda* warnings are not required."); *Ramsey v. State*, 731 So. 2d 79, 81 (Fla. 3d DCA

1999) ("*Miranda* warnings are implicated only when an individual is undergoing actual custodial interrogation by the police."); *State v. Scott,* 786 So. 2d 606 (Fla. 5th DCA 200fl ("Custody for purposes of Miranda encompasses not only formal arrest, but any restraint on freedom of movement of the degree associated with formal arrest."). In determining whether a person is in custody, the Court notes that "[a] person is in custody if a reasonable person placed in the same position would believe that his or her freedom of actions was curtailed to a degree associated with actual arrest." *Ramirez v. State*, 739 So. 2d 568, 573 (Fla. 1999) (citation omitted). Although the Florida Supreme Court declined to set out a "four-factor test," the Court considered the following factors in determining whether the defendant was in custody: (1) the manner in which police summon the suspect for questioning; (2) the purpose, place, and manner of the interrogation; (3) the extent to which the suspect is confronted with evidence of his or her guilt; and (4) whether the suspect is informed that he or she is free to leave the place of questioning. Id. at 574.

Based upon the testimony presented at the August 18, 2005 evidentiary hearing, the Court finds the testimony presented by Sergeant Flair to be highly credible. *See Smith*, 697 So. 2d at 992. In the instant matter, Defendant independently and voluntarily went to the hospital to seek treatment for his own injuries. Law enforcement happened to find him in the same hospital where the victim was being treated, but law enforcement did not  take any steps to have Defendant treated or hospitalized. Although there was an officer posted outside Defendant's hospital room, the Court doubts Defendant was even aware of that officer's presence. When Sergeant Flair approached Defendant, she was accompanied by another detective and a uniformed officer; however, Sergeant Flair and the other detective were both wearing business suits and had their weapons concealed, and there is no evidence that the mere presence of the three law enforcement officers would have caused Defendant (or any reasonable person) to feel that he was in custody. Moreover, after the officers were able to meet with Defendant and Sergeant Flair began questioning Defendant, their discussion never reached a point where Defendant attempted to leave or even requested that the officers leave. Defendant was hospitalized and undergoing treatment for injuries; he was physically unable to get up and leave due purely to medical reasons, not because of any communication or action by law enforcement. Even though Sergeant Flair testified that if Defendant had tried to leave after the first minute of his interview, she probably would have detained him until she conferred with the State Attorney's Office, the Court again notes that the situation never escalated to that point; Defendant never attempted to leave and Sergeant Flair never advised him he could not leave nor that she might detain him until she conferred with the State Attorney's Office. "A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).

Therefore, after considering Defendant's Motion, the State's Response, the court file and record, relevant case law, as well as the testimony and argument presented at the August 18, 2005 and August 29, 2005 evidentiary hearings, the Court finds that under the instant circumstances, a reasonable person in Defendant's position would not believe he was in custody or that his "freedom of actions was curtailed to a degree associated with actual arrest." The Court, therefore, finds Defendant was not in custody at the time he was initially questioned by Sergeant Flair and Miranda warnings were not initially required. Consequently, the Court further finds that a motion in limine or motion to suppress Defendant's pre-*Miranda* statements would have been without merit. Accordingly, Defendant has failed to show how counsel performed deficiently or how the outcome of the proceedings would have been different. As such, no relief is warranted on ground B of Defendant's Motion.

(Exh. 12 at pp. 4-12).

The state trial court's decision is objectively reasonable. Dexter's counsel had no meritorious basis for seeking suppression based on an alleged *Miranda* violation, nor was there a reasonable probability that such a motion would have been successful. *See, e.g., United States v. Carter*, 355 F.3d 920, 924 (6th Cir. 2004) (In order for the reviewing court to find a reasonable probability that the outcome of the trial was altered by counsel's performance, the court must first conclude there was a reasonable probability that a motion to suppress statements would have been successful). Moreover, the state court's decision was based on substantial evidence in the record. The factual findings of the state court, including the credibility findings, are presumed to be correct unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Rolling v. Crosby,* 438 F.3d 1296, 1301 (11th Cir. 2006). Dexter has failed to carry his burden.  Ground two does not warrant habeas relief because Dexter has not shown that trial counsel was ineffective for failing to file a motion to suppress statements that were elicited in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966).

Ground Three

-17-

Dexter argues the state court denied him his constitutional right to a fair trial by omitting from the jury instructions essential elements of the offense of felony causing bodily injury.  He claims that:

> when the trial court omitted essential statutory language from the jury instructions on Count II, the jury was inaccurately informed of the law to apply to the facts. Specifically, the state court instructed the jury that all they needed to find "guilt" on Count II was conduct on [sic] Petitioner that caused Kirkland injury. The language in F.S. 782.051 condemns "an intentional act that's not an element of the charge [sic] offense.     "

Dexter raised this argument in his pro se initial brief on direct appeal, arguing:

> In Count II, Dexter was charged with Felony Causing Bodily Injury under § 782.05191), Fla. Stats. (1999).  That offense, created in 1997, has no Standard Jury Instructions attached to it.  Nevertheless two elements must be proven before the offense can be accomplished.  They are (1) the commission of an enumerated felony and (2) during the commission of the felony, an intentional act that caused bodily harm to the victim.  *Busby v. State*, 766 so. 2d 259 (Fla. 4th DCA 2000).  The trial judge below instructed the jury as follows:
>
> > And the last count is Felony Causing Bodily Injury.  Before you can find Mr. Dexter guilty of this, the State must prove these two elements beyond a reasonable doubt:
> >
> > First, that he did perpetrate or attempt to perpetrate a robbery or a burglary; and
> >
> > Second, that during the course of said conduct, he did commit, aid, or abet an act that actually caused bodily injury to John Kirkland.
>
> (II, T. 234).

Before the jury could lawfully find the second element, there would have to exist competent, substantive evidence that Dexter committed, aided, or abetted an intentional act which caused the weapon to discharge.  The language in § 782.051(1) reads, in pertinent part:

> > Any person who perpetrates or attempts to perpetrate any felony enumerated in s. 782.043 and who commits, aids, or abets an intentional act that is not an essential element of the  felony and that could, but does not cause the death of another commits a felony of the first degree . . .

Two fundamental problems exist with [the] court's instructions.  First, the deletion of any reference to "an intentional act that is not an essential element of the felony" lead the jury to believe that holding the weapon was sufficient to constitute "conduct" (as the court said) that actually caused injury.  Second, under the circumstances of this case, the failure to clarify what constitutes "cause" again misled the jury into thinking that commission of the armed burglary was cause per se.

(Dexter's initial pro se brief on direct appeal, Exh. 2, at pp. 5-6)

In his pro se initial brief, Dexter acknowledged that the claim was procedurally barred because trial counsel had not objected to the instruction as given, but Dexter claimed in his appellate brief, as he now claims in his federal habeas corpus petition, that the jury instructions given constituted fundamental error.

 Ground three does not warrant federal habeas corpus relief for two reasons.  First, the claim is procedurally barred in this Court because Dexter did not object at trial to the instructions as given, and the claim was barred in state court.  Claims that are procedurally defaulted in state court are not reviewable by this Court unless the petitioner can demonstrate cause for the default and actual prejudice, *Wainwright v. Sykes*, 433 U.S. 72 (1977), or establish the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the conviction of a  defendant who was "actually innocent" contemplated in *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Dexter has not demonstrated cause and prejudice or a miscarriage of justice to obtain federal review of the defaulted claim.

Second, the error, if any, did not rise to the level of fundamental error under Florida law. The Florida Supreme Court has said that fundamental error is "the type of error which 'reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.'"  *McDonald v. State*, 743 So. 2d 501, 505 (Fla. 1999)(quoting *Kilgore v. State,* 688 So. 2d 895, 898 (Fla. 1996)).

The error in the jury instructions was not fundamental because the jury instructions as a whole sufficiently apprized the jury as to what factors established the charged offenses. *Arango v. State*, 411 So. 2d 172 (Fla.)(where supreme court stated that the questioned jury instruction, taken alone, may have conflicted with constitutional principles enunciated by United States Supreme Court; however, court found no error occurred when it looked at the whole of the standard jury instructions given by the trial court), *cert. denied*, 457 U.S. 1140 (1982) [footnote omitted].

A conviction will not be reversed merely because an instruction which might have been proper is not given. Rather, the appellate court must conclude that the jury was affirmatively misled by the instruction that was given. *Cronin v. State*, 470 So. 2d 802 (Fla. 4th DCA 1985). The jury instructions in this case included instructions on the crimes of armed burglary and attempted armed robbery, as well as felony involving bodily injury. As a whole, the jury was advised (1) that the defendant was charged with armed burglary and was told of the acts that constituted armed burglary; (2) that the defendant was charged with attempted armed robbery and told of the acts that constituted attempted armed robbery; (3) that the defendant was charged with felony involving bodily injury, which required proof that during the perpetration or attempted perpetration of the robbery and/or burglary, the defendant committed, aided or abetted an act that actually caused bodily injury to the victim.

Neither of the underlying felonies charged in Dexter's case, attempted armed robbery and armed burglary, required proof of an act that caused bodily injury to the victim. Thus, the instructions given, taken together, sufficiently advised the jury that an additional action, other than the acts necessary to constitute either the robbery or the burglary, was required to support the felony involving bodily injury charge.  Clearly, the jury had to find that Dexter committed an

act other than those making up the underlying felonies in order to convict him of the felony involving bodily injury offense. Contrary to Dexter's assertion, the jury could not have convicted him merely because it found he had committed either one or both of the underlying felonies.

The Florida Supreme Court has held that it is not fundamental error to fail to instruct on an element of an offense where the record shows there was no dispute over that particular element. *State v. Delva*, 575 So. 2d 643 (Fla. 1991). Here, it was undisputed that the victim suffered extensive injuries to his leg caused by the shooting, an act which is not an essential element of either the attempted armed robbery or armed burglary charges. Consequently, the fact of the shooting not being in dispute, any failure to instruct that an act "not an essential element of the underlying felony" must occur, was not fundamental error under *Delva*.

Ground three does not warrant habeas corpus relief.

**Accordingly, the Court orders:**

That Dexter's petition is denied.  The Clerk is directed to enter judgment against Dexter and to close this case.

**CERTIFICATE OF APPEALABILITY AND
LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ··· only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274,

282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on May 2, 2008.

Susan C. Bucklew

SUSAN C. BUCKLEW
United States District Judge

Counsel of Record
Byron Dexter, Pro se